In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.

Appeal of CONSOLIDATED EDISON COMPANY OF NEW YORK, Inc.

No. 71–1627.

United States Court of Appeals, Third Circuit.

Argued June 8, 1972.

Decided Aug. 8, 1972.

Aaron M. Fine, Philadelphia, Pa., Harold E. Kohn, Dolores Korman, Philadelphia, Pa., for appellant, Consolidated Edison Co. of New York, Inc.; Bernard Hulkower, Asst. Gen. Counsel, Joel M. Lasker, New York City, Consolidated Edison Co. of New York, Inc., of counsel.

Norman L. Holmes, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., Marvin Comisky, Matthew W. Bullock, Jr., Philadelphia, Pa., special counsel for Trustees, Robert W. Blanchette, Philadelphia, Pa., counsel for Trustees.

Before HASTIE, GIBBONS and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

Appellant, Consolidated Edison Company of New York, is a major supplier of power for traction and other purposes to Penn Central Transportation Company, a railroad in reorganization under section 77 of the Bankruptcy Act, 11 U.S.C. § 205. When the reorganization proceeding began on June 21, 1970 the railroad owed Consolidated Edison some $1,200,000 for energy already supplied. Shortly thereafter, the district court entered Order No. 18 directing the railroad to honor public utility charges "billed in regular course" and pay Consolidated Edison and similar suppliers "within fifteen calendar days of presentation of the bill" for energy supplied beginning June 22, 1970. Order No. 18 also deferred disposition of Consolidated Edison's claim for pre-reorganization indebtedness without prejudice to any priority to which this claim might be entitled. Finally, the order denied an application of Consolidated Edison for a deposit as security for future charges, without prejudice to subsequent reconsideration of the matter.

Some time later Consolidated Edison renewed its request that the court require the Penn Central trustees to deposit with it some $1,700,000 as security for future charges and also to pay forthwith the past due $1,200,000. The application pointed out that the business of the debtor continues to be operated at a loss. On the other hand, the court found that the debtor has paid each of the appellant's monthly billings substantially as the court had directed. By Order No. 263 the district court denied the

renewed application. The present appeal has been taken from Order No. 263.

In support of its claim for $1,200,000 in payment for the pre-reorganization debt appellant points out and the debtor does not dispute that under the terms of its tariff, as validated under New York law, it is entitled to discontinue service if past due bills are not paid. Apparently appellant recognizes that, but for the railroad's need to continue purchasing energy from it in order to continue operations during reorganization, there would be no doubt that the reorganization court acted properly when it postponed payment of appellant's claim of $1,200,000 for pre-reorganization services until that future stage of reorganization at which the court in normal course will consider and act upon all claims. Indeed, it is the basic purpose and scheme of the corporate reorganization provisions of the Bankruptcy Act to enable a financially embarrassed debtor to postpone payment of accumulated financial obligations until there can be formulated and approved a fair and feasible plan for satisfying those obligations without liquidating the burdened enterprise.

■ Seeking a contrary result here, appellant seems to argue that its claim may and indeed must be paid now to prevent the discontinuance of an essential service.[1] True, the petition upon which the district court acted alleges that it has a right to discontinue service to a delinquent customer. But nothing appears to indicate that the appellant has given notice of or taken any other action toward the discontinuance of service because pre-reorganization bills remain unpaid. Of course if appellant should take or threaten such action the reorganization court would then have occasion to consider enjoining any interruption of service. It would have to decide whether whatever right a New York public utility normally may have to discontinue service to a delinquent customer can prevail over the right and duty of the reorganization court under federal law to defer payment to pre-reorganization creditors that would jeopardize the achievement of otherwise feasible railroad reorganization.[2] But the present dispute has not reached and may never reach that stage. We will not make an anticipatory ruling upon the correctness of what the district court might decide if occasion should arise. It is enough for now that the present record discloses no sufficient cause for immediate action upon appellant's $1,200,000 claim while pre-reorganization claims in general have been deferred for future determination, classification and payment in accordance with a plan of reorganization.[3]

There remains appellant's other and apparently principal contention that the reorganization court erred in refusing to require the railroad to make a large deposit to protect it against possible nonpayment of future bills. In substance appellant says that the court is forcing it against its will to extend credit to a financially embarrassed purchaser which already is in its debt for past services.

---

1. A number of cases declare a so-called "necessity of payment" exception to the normal deferment of the payment of pre-reorganization claims until their disposition can be made part of a plan of reorganization. These cases permit immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid. Gregg v. Metropolitan Trust Co., 1905, 197 U.S. 183, 25 S.Ct. 415, 49 L.Ed. 717; Miltenberger v. Logansport, C. & S. W. Ry. Co., 1882, 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117; In re New York, N. H. & H. R. R. Co., D.Conn.1967, 278 F.Supp. 592, aff'd 2 Cir., 405 F.2d 50, cert. denied Abex Corp. v. Trustees of Property of N. Y., N. H. & H. R. Co., 394 U.S. 999, 89 S.Ct. 1592, 22 L.Ed.2d 776.

2. Cf. Matter of Penn Central Transportation Co., 3d Cir. 1971, 452 F.2d 1107.

3. Cf. In re Pressed Steel Car Co. of N. J., 3d Cir. 1938, 100 F.2d 147, cert. denied Wick v. State of New Jersey, 306 U.S. 648, 59 S.Ct. 589, 83 L.Ed. 1047; In re Burbank Corp., S.D.Cal.1943, 48 F.Supp. 172.

Moreover, when the appellant, a New York public utility, undertakes to serve a customer it reserves, under sanction of New York law,[4] the privilege to require a customer to deposit security for future service.

On this point the district court reasoned as follows:

"Con Ed has the security of a Court order directing the Trustees to make current payments. All current bills are being honored. Except for a few minor delays not attributable to the Trustees, Order No. 18 has been and is being fully complied with. If Con Ed is entitled to require a security deposit, then so are all of the other 40-odd utilities which furnish substantial amounts of power to the railroad; yet requiring such deposits would likely make it financially impossible for the railroad to operate at all. The provisions of state law must yield to § 77 on this issue."

■ Certainly section 77 reflects a normally paramount public interest in the uninterrupted operation of American railroads while potentially fruitful efforts at financial reorganization and rehabilitation proceed under judicial supervision. Yet, fair dealing with third persons and appropriate respect for relevant state law are significant factors to be taken into account when they militate against judicial approval of a particular course, even though that course would facilitate uninterrupted operation and ultimate reorganization.

Indeed, section 959(b) of title 28, United States Code, explicitly requires "[A] trustee . . . appointed in any cause pending in any court of the United States . . . [to] manage and operate the property in his possession . . . according to the requirements of the valid laws of the State in which such property is situated.

. . . ." But no state law is violated by the refusal of the Penn Central trustees to make a deposit to secure future utility bills. New York law sanctions appellant's action in calling for a deposit but does not purport to make the customer's refusal of the demand an actionable wrong. Here again, it is only when appellant shall seek to discontinue service in reliance on a privilege claimed under state law[5] that issue can be joined on the matter of obeying state law. Nevertheless, we recognize that, apart from New York law, a serious question of fundamental fairness to the supplier arises if it is compelled to serve a customer without reasonable assurance of prompt payment.

■ In the present case, the district court pointed out that Order No. 18 requires the trustees to make prompt payment of current utility bills and that the trustees have been and are in substantial compliance with that order. Moreover, the fact that charges for energy required for current railroad operations are expenses of administration, entitled as such to priority over other categories of claims against the debtor, minimizes the risk of non-payment to the appellant even if the attempted reorganization should be unsuccessful. The district court weighed risk of harm to the appellant in these circumstances against what it found to be a substantial impediment to continuing operation if many millions of dollars should be taken from the railroad's available cash at this time and surrendered as security for future billings to some forty utilities that serve it. Finding the risk of harm to the appellant slight and the likelihood great that the posting of large deposits with all concerned public utilities would jeopardize the continuing operation of the railroad merely to give further security to suppliers who already are reasonably

---

4. See Public Service Law § 120. (McKinney's Consol.Laws, c. 48, Supp., effective July 1970). Section 120 of the Public Service Law was a recodification of section 13 of the New York Transportation Corporations Law which had granted to a gas and electric corporation the privilege to demand a deposit. The sections differ only as to matters not material to this case.

5. See Transportation Corporation Law § 15 (McKinney Supp. 1970).

protected, the reorganization court permissibly refused to require the deposit sought by the appellant.

At the same time, we are concerned that, under the present arrangement, there is a time each month when the appellant has supplied the railroad with some $800,000 worth of electricity for which it has not been paid. This is true because the bills are rendered monthly, time is required for determining actual consumption and transmitting each monthly billing, and payment is not required until fifteen days after each bill is received. The appellant originally asked the court for permission to make weekly billings and to require payment within 48 hours after receipt thereof. We are not sure that, in an operation as large and complex as that of the debtor, payments of all utility bills within 48 hours after each billing can consistently be achieved week after week. As to the frequency of billing, if appellant wishes to render weekly billings, each of which is likely to exceed $100,000, it may well be reasonable to permit this rather than billing for an entire month during which the railroad's current obligation has mounted to substantially more than half a million dollars. Certainly, the success of the reorganization would not be jeopardized by semi-monthly billings, each to be followed by payment as promptly as efficient business procedures will permit. Alternatively, it might be reasonable to permit billing on estimated use during the billing period without actual meter readings, but with a subsequent adjustment at next billing to reflect any overpayment or underpayment made for the preceding period.

For these reasons, we hold that, upon proper application by appellant, the district court should consider feasible expedients for shortening the interval between the appellant's supplying of energy and the trustees' payment for it.

Subject to the foregoing provision for additional proceedings, the order here in question will be affirmed.