In re SECURITY INVESTMENT
PROPERTIES, INC. and Guardian
Properties-Athens, Inc.

GEORGIA POWER COMPANY

v.

SECURITY INVESTMENT PROPER-
TIES, INC. and Guardian
Properties-Athens, Inc.

Nos. B74–2506A, B74–2507A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 8, 1975.

Stacey W. Cotton, Atlanta, Ga., for debtor.

Jack W. Tarver, Jr., Atlanta, Ga., for trustee.

### IN PROCEEDINGS FOR AN ARRANGEMENT UNDER CHAPTER XI

### ORDER

RICHARD C. FREEMAN, District Judge.

This is an appeal from an order of the bankruptcy judge entered in a proceeding pursuant to Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701, *et seq.*, enjoining appellant utility company from requiring appellees to pay a two-months' security deposit or post a surety bond as a precondition to continued electrical service. Two questions are presented on appeal: (1) whether adjudication of appellees as bankrupts renders the instant appeal moot and (2) assuming that the appeal is not moot, whether the bankruptcy judge, in the exercise of his summary jurisdiction, properly enjoined appellant from requiring a security deposit, a procedure authorized under state regulations adopted by the Georgia Public Service Commission.

Before turning to the merits of the appeal, a brief review of the factual background of this action is warranted. Appellee corporations are engaged in the operation of several apartment projects. As a result of adverse financial conditions, appellees instituted proceedings for an arrangement under Chapter XI on September 30, 1974. Thereafter, appellant Georgia Power Company demanded that appellees post a security deposit equalling two months' electrical service, or charges totalling approximately $35,-000.00, as a condition for continued electrical service to their apartment complexes. Appellees, financially unable to comply with the request, agreed that appellant would be paid currently for all services furnished, and also agreed that appellant had a right to be paid as an administrative priority under appellee's Chapter XI proceedings.

Thereafter, at the request of appellees, the bankruptcy judge entered an order temporarily restraining appellant from terminating service pending a determination on the merits of the instant dispute. On July 9, 1975, the bankruptcy judge enjoined appellant from terminating electrical service or requiring a security deposit, finding, as a matter of fact, that the availability of electrical power was essential to the preservation and protection of appellees' assets. The bankruptcy judge also found that if appellees were required to make the security deposit, they would be unable to continue their business operations, and their attempts to formulate a plan of rehabilitation in the Chapter XI proceeding would be frustrated, if not wholly defeated. The bankruptcy court further

held, as a matter of law, that the right to use electrical service was "property in the possession" of the appellees at the time of filing the petition, and that, therefore, its injunction was an appropriate exercise of its summary jurisdiction. Alternatively, the bankruptcy court held that even if such electrical service were not technically "property possessed" by the debtor, such injunction was authorized by the general equitable powers of the bankruptcy court to issue injunctions to prevent the defeat or impairment of the jurisdiction of the bankruptcy court and to effect the rehabilitative provisions of Chapter XI free from interference. 11 U.S.C. § 11(a)(15); 28 U.S.C. § 1651; See In re Schokbeton Industries, 449 F.2d 321 (5th Cir. 1971).

On October 2, 1975, a consent order was entered and approved by the bankruptcy judge, adjudicating appellees as bankrupts, thus automatically terminating the Chapter XI proceeding. Appellees, therefore, argue that "the very concern of the appellant that it have adequate protection during the pendency of the Chapter XI proceeding has been rendered moot," and thus, since there is no longer a viable justiciable controversy the instant appeal should be dismissed.

## MOOTNESS

Appellees assert, in support of their mootness argument, that since both appellees have been adjudicated bankrupt, all bills owing to appellant since the filing of the bankruptcy petitions shall be paid within a short period of time. Accordingly, appellees assert that whatever needs appellant may have had of protection against nonpayment during the pendency of the Chapter XI proceeding are now moot, and that no justiciable controversy remains for this court to consider.

■ Appellant, on the other hand, while admitting the inherent limitation of federal jurisdiction to decide only justiciable or live controversies, argues that the instant situation fits within the exception to the mootness doctrine, when issues presented are "capable of repeti-

tion yet evading review." See, e. g., Doe v. Bolton, 410 U.S. 179, 187, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969); Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). In support of its contention that the instant issue is capable of repetition, appellant argues that the issue of the bankruptcy judge's jurisdiction over Georgia Power Company arises in almost every Chapter XI proceeding, since the bankruptcy judge generally enters an order restraining appellant utility from terminating service. Moreover, appellant asserts that this jurisdictional issue frequently "evades review", since an appeal from the decision of the bankruptcy court to the district court and up to the appellate courts would frequently entail more time than the duration of the ordinary Chapter XI proceeding filed in jurisdictions in which appellant supplies electrical service. Finally, appellant claims that the recurring controversy doctrine is peculiarly applicable to situations such as that herein, where the failure to resolve the issue raised on appeal may have future deleterious effects upon the party raising the issue. See generally, 6A J. Moore, Moore's Federal Practice ¶ 57.13 (1973).

■ This so-called "recurring controversy" doctrine stands for the proposition that a controversy which has a substantial likelihood of recurring in the future is not a moot controversy, and arises from an "exceptional situation . . . [which] might permit a departure from '[t]he usual rule in federal cases . . . that an actual controversy must exist at stages of appellate or certiorari review, and not simply at the date the action is initiated.' (citations omitted)." DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974). In one of the earliest enunciations of the recurring controversy exception, the Supreme Court refused to dismiss as moot an appeal from a cease and desist order issued by the Interstate Commerce Commission, although the order had by its own terms

expired before the issue reached the Supreme Court. *Southern Pacific Terminal Co. v. I. C. C., supra.* In that case, the Court, while noting that it had jurisdiction to determine only actual controversies, stated:

> But there is a broader consideration. The question involved in the orders of the Interstate Commerce Commission are usually continuing, . . . , and these considerations, ought not to be, as they might be, defeated, by short-terms [sic] orders, capable of repetition, yet evading review, and at one time the government, and at another time the carriers, have their rights determined by the Commission without a chance of redress.

*Id.,* 219 U.S. at 514, 31 S.Ct. at 283.

■ The exception has thus been applied in cases which by their very nature involve factual circumstances in which issues and the *status of the parties* change periodically, such as pregnancy and the need for an abortion, *see, e. g., Doe v. Bolton, supra; Roe v. Wade, supra;* an upcoming election which has occurred by the time the issue reaches the appellate courts, *Moore v. Ogilvie, supra;* and residency requirements to vote, which are satisfied before the party could obtain judicial review of their constitutionality. *Dunn v. Blumstein,* 405 U.S. 330, 332 n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). On the other hand, the courts have applied the mootness doctrine and dismissed the appeal where the chance that the controversy would ever be revitalized is merely speculative or purely impossible, such as where an individual seeking to compel a hospital to provide facilities for sterilization got sterilized at another hospital, *Allen v. Sisters of St. Joseph,* 490 F.2d 81 (5th Cir. 1974); a law student seeking to compel his entrance into a particular law school was already admitted and close to graduation, *DeFunis v. Odegaard, supra;* and where a woman got divorced after satisfying the state residency requirements, *cf. Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1974). Appellant asserts that the instant case is distinguishable from the latter line of cases, since Georgia Power has a substantial likelihood of becoming embroiled in the identical controversy in future Chapter XI proceedings, since it customarily attempts to assert its right to demand a security deposit from Chapter XI debtors in order to protect its interest in receiving future utility payments. It is clear, however, that for a controversy to be recurring within the exception to the mootness doctrine, the controversy must be recurring between the same parties, and not merely be the recurrence of an abstract legal dispute. *DeFunis v. Odegaard, supra.*

■ Nevertheless, while appellants apparently rely solely on the recurrence of the legal controversy in support of their arguments that the instant appeal should not be dismissed on account of mootness, it is not clear to this court that the same controversy is incapable of repetition between the parties herein. Thus, appellees do not appear to argue that their adjudication as bankrupts necessarily terminates the force of the bankruptcy judge's injunction prohibiting appellant from terminating service or requiring a deposit during the pendency of the straight bankruptcy proceeding. Similarly, assuming arguendo that for some reason appellees' debts are not discharged or that assets are discovered before the termination of the bankruptcy proceeding that would permit appellee to continue its business operations, it could not be doubted that the previous injunction issued by the bankruptcy judge denying appellant the right to either terminate service or require a security deposit would continue to affect substantially the right of the power company to recover for provision of electrical services. In view of those possibilities, the mere adjudication of bankruptcy is not sufficient to terminate the controversy on the grounds of mootness. *Cf. Hardwick v. Brinson,* 523 F.2d 798 (5th Cir. 1975) (transfer of state prisoner to a different prison within the state system does not assure that prisoner would never be returned or that alleged discriminatory conduct will never recur.)

Finally, from past experiences recounted by appellant in its brief, it is also apparent that a substantial number of the Chapter XI proceedings initiated in this district are, indeed, short-lived and terminated by an adjudication of bankruptcy. If mere adjudication of bankruptcy relegates appellant's asserted rights moot, it is, therefore, clear that Georgia Power would be effectively precluded from obtaining judicial review of the bankruptcy judge's order. ·

■ Although cited by neither party in the instant appeal, we find that the recent decision of the Supreme Court in *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), is most nearly apposite to the circumstances herein and directly supports the arguments raised by the appellant. In that case, the Supreme Court refused to dismiss an action for injunctive and declaratory relief with respect to workers engaged in a strike and their eligibility for public assistance through state welfare programs despite the fact that the strike had already ended, finding that the issue presented was "capable of repetition, yet evading review." *Id.* at 1700. Thus, the Supreme Court held that the case was not moot, even though the strike had ended, because the New Jersey programs significantly affected the present interests of the company and its employees in their ongoing collective bargaining relationship, and because the duration of most strikes are not long enough to permit effective appellate review of legal issues raised by the strikes. Moreover, the court noted that although some strikes may endure long enough for complete judicial review of the controversies they engender, this would not preclude challenge to "state policies that have had their impact and that continue in force, unabated and unreviewed." 94 S.Ct. at 1700. Accordingly, on review of the relevant cases, this court concludes that the issue of whether appellant utility may precondition the continuance of electrical service to a Chapter XI debtor upon payment of a security deposit is capable of repetition and yet evading review; therefore, the instant appeal is not moot.

## THE MERITS

Turning to the merits of the instant appeal, appellant argues that a bankruptcy judge does not have *summary* jurisdiction to enter an order restraining appellant from requiring a security deposit from a Chapter XI debtor as a prerequisite to continuation of electrical service, where the rules and regulations are applied indiscriminately to all its potential customers, and where such regulations are approved by the Georgia Public Service Commission.[1] Thus, appellant argues in the first instance, that bankruptcy courts are courts of limited jurisdiction, which "have exclusive jurisdiction of the *debtor and his property, wherever located,*" 11 U.S.C. § 711 (emphasis supplied), and that its summary jurisdiction extends to the adjudication of controversies "relating to *property over which* they (the debtors) have *actual or constructive possession*" at the time of filing a petition in bankruptcy. *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940) (emphasis supplied). Appellant, therefore, asserts that electrical service is simply not property within the possession of the debtor[2] and that accordingly, a bankruptcy judge is without jurisdiction to enter an order interfering with the utility's provision of electrical service to customers pursuant to its contracts.

1. The regulation upon which appellant relies herein, states in relevant part:

   B. CREDIT REGULATIONS: A cash deposit amounting to approximately twice the established monthly bill may be required of applicants to guarantee the payment of all bills and the protection of the Company's property on the Customer's premises. (P. 1.05, Revised January, 1972).

2. Appellant, in its brief, criticizes the opinion of the bankruptcy judge, in which the judge stated that appellees have a "fundamental right" to electrical service, stating that "[s]urely, in light of several recent decisions, neither

The bankruptcy judge rejected such arguments, stating:

[c]learly such continued service in a business operation under the direction and supervision of the Bankruptcy Court is an intangible property right as contemplated by the Act and is a valuable asset which the injunctive power of the Bankruptcy Court should protect.

Moreover, the bankruptcy judge held that the issuance of an injunction against appellant was consistent with its authority under § 2(a)(15) of the Act to "make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act," 11 U.S.C. § 11(a)(15), and with the general authority of federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions," 28 U.S.C. § 1651. Accordingly, the bankruptcy judge concluded that the instant injunction against termination of electrical service was essential to the preservation and protection of appellees' assets, necessary to the continued operation of appellees' business in the Chapter XI proceeding, and necessary to promote the general purposes of the Bankruptcy Act. Appellant, however, argues that whatever the purposes of the Bankruptcy Act, the above-mentioned statutes are inapplicable since the bankruptcy judge does not have summary jurisdiction over electrical service, because it is not property within the possession of the debtor at the time of filing the petition. *See, e. g., Chemical Lime Co. v. West Penn Power Co.,* 24 F.Supp. 217 (M.D.Pa.1938). In conclusion, appellant argues that the instant injunction could not have been issued "in aid of its jurisdiction", *see* 28 U.S.C. § 1651, since the bankruptcy judge had no jurisdiction over electrical service in the first instance.

While this court finds that appellant's arguments are both cogent and persuasive, we find that the rule prevailing in this circuit, as enunciated in *In re Fontainebleau Hotel Corp.,* 508 F.2d 1056 (5th Cir. 1975), is otherwise. In that case, the court held that a Chapter XI debtor had possession of its old telephone numbers at the time of filing its Chapter XI petition, and that the bankruptcy judge, therefore, as an exercise of its summary jurisdiction, properly entered an injunction against the telephone company restraining it from changing the debtor's telephone number or from requiring the debtor to post a security bond to insure that the telephone company would not ultimately be deprived of its money. Significantly, with respect to the initial jurisdictional question as to whether the hotel had possession of the telephone numbers in question at the time the petition was filed, the court held that *"right of use is surely the most important attribute of possession,* and the hotel clearly had the right of use as

Judge Norton nor the appellees are contending that the appellees have a constitutional right to the electrical service involved here. *See Jackson v. Metropolitan Edison Co.,* 483 F.2d 754 (CA3, 1973), *aff'd* [419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)]; *Lucas v. Wisconsin Electric Power Co.,* 466 F.2d 638 (CA7, 1972), [*cert. denied,* 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696 (1973)]."

We, of course, find it unnecessary to rule on the question of whether there is a constitutional right to electrical service since the sole question before the court is whether electrical service can be deemed to be property in the possession of a debtor in a Chapter XI proceeding. Moreover, we note that neither of the decisions cited by the appellant are apposite to the existence *vel non* of a "property interest" for due process or any other purposes, since both decisions turned on a finding that there was insufficient state involvement in the provision of electrical services to invoke the protections of the due process clause of the Fourteenth Amendment. Thus, in *Jackson v. Metropolitan Edison Co., supra,* the Supreme Court expressly stated in a footnote that:

[b]ecause of our conclusion on the threshold question of state action, we do not reach questions relating to the existence of a property interest or of what procedural guarantees the Fourteenth Amendment would require if a property interest were found to exist.

419 U.S. at 348, 95 S.Ct. at 452, 42 L.Ed.2d at 482, n. 2.

to these telephone numbers . . ." *Id.* at 1059 (emphasis supplied).

In the *Fontainebleau Hotel* decision, the Court of Appeals rejected arguments similar to those raised by appellant herein, that appellant has a right under state law and state-approved regulations to require the posting of a security deposit. Thus, the court specifically rejected authority from two other circuits which had held that a debtor's old phone number was not property within its possession, *see In re Best Re-Manufacturing Co.,* 453 F.2d 848 (9th Cir. 1971); *Slenderella Systems of Berkeley, Inc. v. Pacific Telephone and Telegraph Co.,* 286 F.2d 488 (2d Cir. 1960), stating:

> [These former cases] rely heavily on the fact that, as in this case, the telephone company tariffs recited that a subscriber acquires no property rights in a telephone number when he is permitted the use of it. A tariff, however, drafted by the company and certain to be self-serving, cannot determine the meaning of the term "property" in the federal bankruptcy statute. The telephone numbers are a valuable asset, just like the hotel's building or furniture. The purpose of summary jurisdiction is to give the bankruptcy court a quick means of preserving the wherewithal for maintaining the debtor's business. Protecting use of the telephone numbers by the debtor clearly falls within that responsibility.

*Id.* at 1059.

Moreover, the *Fontainebleau Hotel* court stated that once the issue of the court's jurisdictional power over the property was resolved, "its authority to issue protective orders against interference with that property follows natural-

ly," *id.,* and no telephone company tariffs approved by the state could preclude the bankruptcy court from issuing its injunction. Thus, the court stated:

> The tariffs, and the relevant portions of state law, do not compel the company to issue new numbers when service is transferred from one subscriber to another (here, from the hotel to the trustees), or to demand a deposit. Rather they only give the company the right to do these things. In this regard the tariffs and related laws are no different from any state law granting a party a right against a debtor. . . . After the filing of the petition, the demands of the bankruptcy laws take precedence. If a creditor, like the telephone company, could continue to enforce his state law rights after the initiation of bankruptcy proceedings, the bankruptcy laws would be meaningless. Their very purpose is to suspend the normal operation of rights and obligations between the debtor and his creditors.

*Id.* See *In Re Penn Central Transportation Co.,* 467 F.2d 100, 103 (3rd Cir. 1972) (a public utility is prohibited from requiring the debtor to post a security deposit of all overdue payments on the grounds that rights created under state law must yield to the provisions of the bankruptcy laws applicable to railroads).

■ Appellant would seek to distinguish the *Fontainebleau Hotel* case from the facts herein, on the grounds that the court in that case focused on the "value of the telephone numbers themselves," and did not hold that telephone service *per se* could constitute property in the possession of the debtor, for the purposes of the exercise of summary jurisdiction.[3] While it is true that the specific holding

---

3. Appellant's arguments in this respect are predicated upon the Court of Appeal's reliance upon the importance to the hotel of keeping the same telephone numbers and its discussion in the initial part of its opinion, where it stated:

> [k]eeping the present numbers is important to the hotel because it has invested substantial sums in advertising that lists the numbers. Also, the telephone company would not provide the new number, technically as-

signed to the trustees, to callers who telephone the hotel's old number. The company has virtually conceded that it has no business purpose in changing the numbers, other than coercing the payment of this debt. The bankruptcy court found that the hotel's business would be substantially impaired if it could not keep the present numbers, and granted the trustees' application for an injunction.

Id. at 1058.

of the *Fontainebleau Hotel* decision was that the telephone numbers were in the possession of the debtor, the court concentrated on "the right of use" of those numbers, finding that right of use is the most significant "attribute of possession." *Id.* at 1059. In the instant case, it cannot be disputed at the time that the Chapter XI petition was filed appellees were receiving electrical service, and that there was, at least by implication, a continued right to use that service. Moreover, this circuit has on other occasions recognized the discretionary authority of the bankruptcy judge to issue an injunction restraining third parties from interfering with intangible property rights based on contracts existing at the time the petition was filed. *See, e. g., In Re Schokbeton Industries, Inc.,* 449 F.2d 321 (5th Cir. 1971) (approving an injunction prohibiting a licensor from terminating a contract with a licensee which was still executory at the initiation of the Chapter XI proceeding).

 Finally, the court notes that the considerable reliance by the court in its *Fontainebleau* opinion upon an earlier Third Circuit decision, under facts nearly identical to. those herein, further indicates that there should be no distinction drawn between the "right to use" a telephone number and "the right to use of electrical service." *See In Re Penn Central Transportation Co., supra.* In the *Penn Central* reorganization litigation, without mention of the arguable lack of summary jurisdiction, the circuit court upheld an injunction issued by the bankruptcy judge, restraining the public utility from requiring the debtor to post a security deposit as a precondition to continued electrical service. The court found that New York law, which approved of the public utility's regulations, merely authorized a "privilege" to discontinue service or require a deposit, but did not compel it. *Id.* at 103. Moreover,

that court found that recognition of this privilege would be inconsistent with the salutary purposes of Chapter XI, and detrimental to the continued business operations of the debtor. Similarly, the regulations in question *sub judice,* state that appellant utility "may require" a cash deposit of applicants for service, *see* note 1, *supra,* but need not do so. We, therefore, conclude that the right to continued electric service is an intangible form of property in the possession of the debtor at the time of filing the petition, and that the injunction *sub judice* was an appropriate exercise of the summary jurisdiction of the bankruptcy court.

Accordingly, for the reasons hereinabove expressed, the order and decision of the bankruptcy judge dated July 9, 1975 is hereby affirmed.

It is so ordered.

---

Arguably, electrical service by its very nature is somewhat less concrete than a "telephone number"; however, this court agrees with the bankruptcy judge's conclusion that the right to use electrical service was property in the possession of the debtor, and that appellees' continuance of its business operations would have been effectively thwarted, if appellant had been allowed to require a $35,000.00 deposit or terminate electrical service.