In the Matter of SECURITY INVEST-
MENT PROPERTIES, INC.,
Bankrupt.

GEORGIA POWER COMPANY,
Appellant,

v.

SECURITY INVESTMENT PROPER-
TIES, INC., Appellee.

In the Matter of GUARDIAN PROPER-
TIES–ATHENS, INC., Bankrupt.

GEORGIA POWER COMPANY,
Appellant,

v.

GUARDIAN PROPERTIES–ATHENS,
INC., Appellee.

No. 76–1119.

United States Court of Appeals,
Fifth Circuit.

Sept. 29, 1977.

1322

Robert W. Webb, Jr., Robert L. Mote, Mark S. Kaufman, Atlanta, Ga., for appellant.

Stacey W. Cotton, David W. Pollard, Atlanta, Ga., for appellee.

Before CLARK and GEE, Circuit Judges, and MARKEY \*, Chief Judge.

CLARK, Circuit Judge:

■ We explore a boundary for summary jurisdiction of bankruptcy courts which is familiar to bankruptcy judges but relatively new ground for appellate courts. We must address a preliminary issue of mootness and answer the following question. In a proceeding under Chapter XI, can the bankruptcy judge summarily require a public utility to provide future service to a delinquent customer who did not comply with the utility's demand for a deposit or bond to reasonably secure future services? The district court found that the conversion of the Chapter XI arrangement to a bankruptcy did not moot the issue and held that the injunction was without jurisdictional limits. We agree the cause is not moot but reverse the holding on the merits.

The debtors, Security Investment Properties, Inc., and Guardian Properties—Athens, Inc., initiated voluntary arrangement petitions under Chapter XI of the Bankruptcy Act. 11 U.S.C. §§ 711 *et seq.* At petitioner's request, the bankruptcy judge issued a temporary restraining order forbidding Georgia Power Company from discontinuing electric service at the debtors' apartment complexes. Georgia Power complained to the bankruptcy court that it should not be enjoined unless it received the deposit or surety bond that it had demanded because the debtors were then in arrears for past services. The tariff under which Georgia Power operates allows it to require a deposit amounting to approximately twice a customer's monthly bill.

Relying heavily upon the inherent powers of the bankruptcy court, the purposes of Chapter XI, and upon a decision of this circuit, *In re Fountainbleau Hotel Corporation,* 508 F.2d 1056 (5th Cir. 1975), the bankruptcy court held that its summary jurisdic-tion covered restraining Georgia Power from imposing any security requirement upon a Chapter XI debtor as a condition for future electric service. The bankruptcy court's order enjoined Georgia Power from terminating electric service to the debtors, but provided that the debtors would pay their monthly charges promptly.

Georgia Power appealed the bankruptcy court's order to the district court. Before the district court rendered a decision, the bankruptcy judge approved a consent order adjudging the debtors bankrupts and thus automatically terminating the Chapter XI proceedings. The debtors, now bankrupts, argued that the district court should dismiss Georgia Power's appeal, because a justiciable controversy no longer existed. The district court disagreed because the order continued to affect the rights of the parties and because the legal dispute it presented was capable of repetition yet evading review. On the merits of Georgia Power's complaint, the district court interpreted *Fountainbleau* as empowering the bankruptcy court to predicate summary jurisdiction over a public utility company upon a debtor's right to use the service and the need for protective orders against interference with that property right. Finding no significant distinction between Georgia Power's complaint and that of the telephone company in *Fountainbleau,* the district court affirmed the bankruptcy court's order and decision.

■ The district court correctly concluded that the consent order adjudging the debtors bankrupts did not render this case moot. The district court found that, even after the debtors went into bankruptcy, the injunction would continue to affect the right of Georgia Power to collect for the power it had provided. Thus, the case would continue to involve a substantial controversy between parties having adverse legal interests, and the controversy would not have become moot.

Apart from any continuing effect of the bankruptcy court's injunction, the district court could hear the case because it falls into the category of disputes capable of

\* Of the U.S. Court of Customs and Patent Appeals, sitting by designation.

repetition yet evading review. Given the nearly universal use of utility services, the issue is one that may be expected to arise in the future with some regularity. The district court found that a substantial number of Chapter XI proceedings which were initiated in its district had short lives before terminating in bankruptcy. Georgia Power stated it has sustained losses where orders to provide services without security were entered in Chapter XI arrangements which subsequently collapsed.

The bankruptcy court has wide responsibility for supervising the continuation of a debtor's business under Chapter XI. If the short life of its orders to provide service without security could serve to immunize them from appellate oversight, governmental action would adversely affect Georgia Power's interests without a chance for redress. *See Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Although we recognize that a bankruptcy court's order for service conceivably might remain in effect during the time required for appellate review, such a possibility will not render moot a challenge to policies that, as in the case at bar, have had their impact and continue in force, unabated and unreviewed. *See Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 126–27, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). Thus, on both grounds we affirm the district court's holding that this case did not become moot when the bankruptcy court adjudged the debtors bankrupts.

Every postulate of the district court's holding is premised on its construction and application of *Fountainbleau*. In that case, a telephone company appealed when the district court summarily enjoined it from requiring that the debtor, a hotel corporation reorganizing under Chapter X, pay an overdue bill and make a large deposit as a condition for continued service under its existing set of telephone numbers which would not be reassigned to it if service were interrupted.

■ For the Bankruptcy court to exercise summary jurisdiction over property, the debtor or his trustee must have actual or constructive possession of the property in question. *See Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876 (1940); *In re American Southern Pub. Co.*, 426 F.2d 160, 163 (5th Cir.), *cert. denied sub nom., Bailes v. First Nat. Bank of Mobile*, 400 U.S. 903, 91 S.Ct. 141, 27 L.Ed.2d 140 (1970). *Fountainbleau* recognized that the bankruptcy court would not possess summary jurisdiction unless the debtor actually or constructively possessed some property interest on which the court could fix its exercise of summary jurisdiction.[1] *Fountainbleau* held that the bankruptcy court could predicate summary jurisdiction upon the debtor's right to use the unique and valuable property interest in its telephone numbers, because the debtor's right to use these same numbers established jurisdictional possession.

Especially for a business such as the Fountainbleau hotel, telephone numbers constitute a unique property interest, the value of which increases as the number becomes widely known through publication in guidebooks, posting on billboards, and imprinting on publicity items.[2] The property interest in such numbers differs from a subscriber's rights to the telephone utility's service. By contrast, the debtors in this case possess no indicia or adjunct of the future electric service in issue analogous to *Fountainbleau's* existing telephone numbers.

The debtors assert that their right to use electricity was established by Georgia Pow-

---

[1]. In *Fountainbleau*, we declined to follow the approach of two other circuits that have relied upon state tariffs in holding that a debtor can have no property interest in his telephone number. *See In re Best Re-Manufacturing Co.*, 453 F.2d 848 (9th Cir. 1971), *cert. denied sub nom., Rothman v. Pacific Telephone & Telegraph Co.*, 406 U.S. 919, 92 S.Ct. 1771, 32 L.Ed.2d 118 (1972); *Slenderella Systems of Berkely, Inc. v.* *Pacific Telephone & Telegraph Co.*, 286 F.2d 488 (2d Cir. 1961).

[2]. The First Circuit, recognizing the value of telephone numbers possessed by a bankrupt in business, has allowed their conveyance in order to increase the value of a bankrupt's estate. *See Darman v. Metropolitan Alarm Corp.*, 528 F.2d 908 (1st Cir. 1976).

er's tariffs and existed at the date of their filing for a Chapter XI arrangement. Under debtors' theory, Georgia Power could not cut off their power before providing the notice required by the tariff. Because this notice was not given before the debtors filed under Chapter XI, they maintain that the bankruptcy court could enjoin Georgia Power from cutting off the power to debtors' apartment houses and depriving them of their right to receive electricity from the public utility. By resting their arguments upon the notice proviso in Georgia Power's tariff, the debtors would limit this far-reaching principle to public utilities.

 We cannot agree that the bankruptcy court can interpret the utility's tariffs so as to extend its summary jurisdiction to order the utility to provide unsecured services indefinitely into the future because the company failed to give notice. As we said in *Fountainbleau*, a utility company's tariffs do not establish conclusively the bounds of a debtor's property interest. Debtors' theory would actually empower the bankruptcy court to preserve a right to receive future service yet at the same time hold the debtor immune from any condition of payment or security by the recipient. By such a theory the bankruptcy court could extend its summary jurisdiction to order that one creditor risk further losses to provide services for the benefit of other creditors.

Unless a special property interest is present, the proper inquiry in a case of this type is whether the demand of a public utility for a bond, deposit or other security aims at reasonably securing services that the company will provide after the debtor's filing under Chapter XI or whether, in name or effect, the demand employs the utility's position as sole supplier of a service to recoup prefiling debts or to punish a Chapter XI debtor and undermine the automatic stay issued to creditors at the inception of Chapter XI proceedings. *See In re Penn Central Trans. Co.*, 467 F.2d 100, 102 (3d Cir. 1972). Whether tariff-required notice has been given before or after filing is immaterial.

 In their briefs to this court, debtors raised the alternate theory that the bankruptcy court could exercise summary jurisdiction to order a utility to provide services without security, because it could exercise summary jurisdiction over the flow of funds from the debtors' bank accounts. Logically extended, such a syllogism would allow the bankruptcy judge to exercise summary jurisdiction over future supplies of any good or service, necessary for rehabilitation of the debtors, for which the provider might seek compensation from the debtors' bank account. Such extensive powers to adjudicate summarily conflict with the clearly established principle that the intent of the Bankruptcy Act is to allow bankruptcy courts to exercise summary jurisdiction only in a limited sphere. *See, e. g., Taubel-Scott-Kitzmiller Co. v. Fox*, 264 U.S. 426, 430–31, 44 S.Ct. 396, 68 L.Ed. 770 (1924). Debtors' theory effectively would obliterate these limits; therefore, we reject it.

*Fountainbleau* also differs from the present case, because in *Fountainbleau* the telephone company asserted the provisions of its tariff in an attempt to coerce the trustees in a Chapter X reorganization into paying prefiling debts at the expense of other prefiling creditors. Unless the trustees paid the prefiling debt and made a substantial deposit as well, the telephone company threatened to reassign the debtor's telephone numbers and to refuse to give out the new number to persons calling the old number. The telephone numbers had great value to the debtor because it had invested substantial sums in advertising them. The district court found that the telephone company had no business purpose for the threatened reassignment other than to force the trustees to give it preferred treatment over other creditors in recovering for prefiling debts. As a public utility, the telephone company in *Fountainbleau* had a duty to serve. We held that utility could not use its position to force the trustees to pay a prefiling debt or to post security greater than necessary to secure present services where the Bankruptcy Act would have prevented direct action for the debt

under state law.[3] No prefiling debts are involved here. Georgia Power only requested security for future services.

We recognize that a demand for a deposit securing present utility services may threaten to send a Chapter XI debtor into bankruptcy. However, this possible hindrance to the rehabilitative purposes of Chapter XI cannot bootstrap the bankruptcy court's summary jurisdiction to cover property rights which are not in the actual or constructive possession of the debtor. Here, the debtors had no property interest analogous to the telephone numbers in *Fountainbleau* and the utility had not conditioned its duty to serve either upon security deposits for or the payment of prefiling debts. While a public utility has a duty to serve, neither its history of past service nor its franchise to serve in the future may fix upon it a duty to provide unsecured future service to a Chapter XI debtor. Accordingly, the decision of the district court is

AFFIRMED IN PART, REVERSED IN PART, and REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

---

**3.** 508 F.2d at 1059. *Cf. In re Atlanta Raceway,* 513 F.2d 546, 549 (5th Cir. 1975). *In re Penn Central Trans. Co.,* 467 F.2d 100 (3d Cir. 1972), presented a similar situation. While the court properly deferred pre-reorganization debts, Consolidated Edison, an electric company, sought payment for all its past claims against the railroad and cited its power under state law to suspend services. In the event Con Ed should give notice of discontinuation, the Third Circuit said the district court would have to decide whether whatever right a New York public utility normally may have to discontinue service to a delinquent customer can prevail over the right and duty of the reorganization court under federal law to defer payment to prereorganization creditors that would jeopardize the achievement of otherwise feasible railroad reorganization. 467 F.2d at 102 (footnote omitted).